UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CITY OF CUYAHOGA FALLS, | ) | CASE NO. 5:18-CV-1130 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| JOHNSON CONTROLS, INC., et al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Before the Court is the motion to dismiss filed by defendant Badger Meter, Inc. ("Badger") (Doc. No. 8 ["Mot."]). Plaintiff filed its opposition (Doc. No. 18 ["Opp'n"]), and Badger filed a reply (Doc. No. 19 ["Reply"]). For the reasons discussed herein, Badger's motion to dismiss is GRANTED.

I.     BACKGROUND

Plaintiff City of Cuyahoga Falls ("the City") originally brought this action in the Summit County Court of Common Pleas. (Doc. No. 1-2 ["Compl."].) The City's claims arise out of the City's contract with defendant Johnson Controls, Inc. ("Johnson Controls") for a water-metering system upgrade, intended to generate cost savings for the City. (Compl. ¶ 7.)

In November 2007, the City's council passed an ordinance authorizing the first phase of a potential contract with Johnson Controls for the City's water-metering system upgrade. (*Id.* ¶¶ 18–19.) In the first phase, Johnson Controls conducted a study of the City's operations and systems (including the City's water- and electric-metering systems) to identify energy conservation

measures, facility and infrastructure improvements, and other services that could reduce the City's energy consumption and operating costs. (*Id.* ¶¶ 20–21.) At the time of the first phase, the City universally used 5/8-inch Badger Model 25 Meters ("M-25 Meters") for residential water meters. (*Id.* ¶ 24.)

Based on information gathered by Johnson Controls during the first phase, Johnson Controls submitted a proposed performance contract ("proposed contract"), which included replacing several thousand residential water meters. (*Id.* ¶¶ 28, 38.) The City's council debated the proposed contract for almost three months. (*Id.* ¶ 30.) Debate over the proposed contract included a series of representations to the City by Johnson Controls. (*Id.*) Part of the proposed contract required Johnson Controls to submit cost savings reports ("Savings Reports"), delineating the calculated savings and any shortfall. (Doc. No. 1-7 ["Final Contract."] at 522, 574.[1]) The City entered into the proposed contract with Johnson Controls on or about July 24, 2008. (Compl. ¶ 32.)

As Johnson Controls began performing the contract, the City requested that Johnson Controls use M-25 Meters when replacing residential meters, as the City preferred to keep all residential meters uniform. (*Id.* ¶ 49.) However, Johnson Controls insisted on using 5/8-inch Model LP Meters ("LP Meters"). (*Id.* ¶ 50.)

Because Johnson Controls insisted on using the LP Meters instead of the M-25 Meters, Johnson Controls, the City, and a representative from the meter's manufacturer, Badger, met in spring 2009 to discuss the LP Meters. (*Id.* ¶¶ 54–55.) Badger representative Jeff Moreland ("Moreland") attended the spring 2009 meeting. (*Id.* ¶ 56.) During the spring 2009 meeting,

---

[1] All page number references are to the page identification number generated by the Court's electronic docketing system.

Moreland represented to the City that: (1) Badger was taking the M-25 Meter off the market; (2) the LP Meter was a comparable model to the M-25 Meter; and (3) the LP Meter was serving as the replacement model for the M-25 Meter. (*Id.* ¶ 58.) After the spring 2009 meeting, the City authorized the use of LP Meters. (*Id.* ¶ 59.)

Around January 2014, new administration in the City discovered that the City never received some of the Savings Reports that the contract required Johnson Controls to produce on an annual basis. (*Id.* ¶ 66; Final Contract at 522, 574.) The City had received the Saving Report for Year 1 in or around late 2010 or early 2011. (Compl. ¶ 69.) The City had not received the Savings Reports for Years 2–4. (*Id.* ¶ 71.) Upon request, in May 2014, Johnson Controls produced Savings Reports for Years 2–4 to the City. (*Id.* ¶¶ 68, 71.)

The Savings Reports for Years 2–4 showed that—contrary to the City's belief—there was a significant shortfall in guaranteed savings to the City in a total amount of $784,066.00 (as of May 2014). (*Id.* ¶ 73). The City alleged the shortfall was due to failures with the LP Meters. (*Id.* ¶¶ 72–73.) However, the Savings Reports stated that the shortfall was due to iron/calcium buildup inside the LP Meters' chambers due to the water make-up and water treatment chemistry utilized by the City. (*Id.* ¶ 75.)

On April 12, 2018, the City filed suit in the Summit County Court of Common Pleas against Johnson Controls and Badger. In its complaint, the City brought claims against Johnson Controls for (1) breach of contract, and (2) fraudulent inducement. (Compl. ¶¶ 109–24.) In its complaint, the City also brought one claim against Badger for negligent misrepresentation. (*Id*. ¶¶ 125–32.) As part of its answer, Johnson Controls filed (1) a crossclaim against Badger alleging breach of

duty to defend and indemnification and contribution, and (2) a counterclaim against the City alleging breach of contract.[2] (Doc. No. 10 ["Answer"] at 685–91.)

On May 16, 2018, Johnson Controls, with Badger's consent, removed this action to this Court. (Doc. No. 1 (Notice of Removal).) On May 17, 2018, Badger filed the present motion to dismiss the sole claim against it. The City filed an opposition brief, and Badger filed a reply. The matter is now ripe for the Court's review.

## II.   STANDARD OF REVIEW

In the context of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the sufficiency of the complaint is tested against the notice pleading requirements of Fed. R. Civ. P. 8(a)(2), which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Although this standard is liberal, Rule 8 still requires a complaint to provide the defendant with "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct.1955, 167 L. Ed. 2d 929 (2007). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true," to state a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

---

[2] Johnson Controls also filed a third-party complaint against third-party defendant Aclara Technologies LLC ("Aclara"), alleging (1) breach of duty to defend and indemnification and contribution, and (2) breach of contract. (Answer at 691–92.)

complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2) (second alteration in original)). In such a case, the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [and the] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *see Iqbal*, 556 U.S. at 683.

A complaint need not set down in detail all the particulars of a plaintiff's claim. However, "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79 (stating that this standard requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678 (citing *Twombly*, 550 U.S. at 555); *see Gregory v. Shelby Cty.*, 220 F.3d 433, 446 (6th Cir. 2000) (finding courts should not accept conclusions of law or unwarranted inferences couched in the form of factual allegations). The complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc*., 859 F.2d 434, 436 (6th Cir. 1988) (internal quotations marks omitted), *abrogated on other grounds by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001).

### III. DISCUSSION

In its motion to dismiss, Badger moves for the dismissal of the City's sole claim against Badger: negligent misrepresentation. Ohio law recognizes a tort cause of action for negligent misrepresentation within a business transaction. *See Carpenter v. Long*, 963 N.E.2d 857, 872 (Ohio Ct. App. 2011); *Gutter v. Dow Jones, Inc.*, 490 N.E.2d 898, 900 (Ohio 1986) (quoting Restatement

(Second) of Torts § 552 (1977)). Under Ohio law, a plaintiff can maintain a claim for negligent misrepresentation against:

> [O]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Delman v. Cleveland Heights*, 534 N.E.2d 835, 838 (Ohio 1989) (emphasis omitted) (internal quotation marks omitted) (quoting Restatement of Torts (Second) § 552 (1965)). "A negligent misrepresentation occurs when one 'supplies false information for the guidance of others.' In other words, . . .'there must be some affirmative false statement.'" *Leal v. Holtvogt*, 702 N.E.2d 1246, 1253 (Ohio Ct. App. 1998) (emphasis omitted) (citations omitted).

### A. Statute of Limitations

Badger contends that the City's negligent misrepresentation claim is time-barred. Under a Rule 12(b)(6) motion to dismiss, the Court shall dismiss a claim if the complaint shows conclusively on its face that the action is indeed time-barred. *Gibson v. Am. Bankers Ins. Co.*, 289 F.3d 943, 946 (6th Cir. 2002). Under Ohio law,[3] claims for negligent misrepresentation have a four-year statute of limitations, set forth by Ohio Rev. Code § 2305.09.

"Under Ohio law, the statute of limitations applicable to negligent-misrepresentation claims begins to run when the event giving rise to the claim occurs." *Berhad v. Advanced Polymer*

---

[3] This Court, sitting in diversity, must apply the choice-of-law rules of the forum state: Ohio. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941); *Carash v. Oberlin College*, 14 F.3d 291, 296 (6th Cir. 1994). Ohio's choice-of-law rules direct this Court to apply Ohio law to a tort claim if Ohio has the most significant relationship to the occurrence of the lawsuit. *Morgan v. Biro Mfg. Co.*, 474 N.E.2d 286, 288–89 (Ohio 1984). Here, Ohio has the most significant relationship because all at-issue conduct occurred in Ohio. In applying Ohio law, this Court must apply Ohio's statute of limitations. *See Guaranty Tr. Co. of N.Y. v. York*, 326 U.S. 99, 109–10, 65 S. Ct. 1464, 89 L. Ed. 2079 (1945).

*Coatings, Inc.*, 652 F. App'x 316, 329 (6th Cir. 2016) (citing, among authority, *Dancar Props., Ltd. v. O'Leary-Kientz, Inc.*, No. C-030936, 2004 WL 2974067 (Ohio Ct. App. Dec. 23, 2004) ("[T]he cause of action accrues when the misrepresentation occurs.")). Therefore, the time for the City's negligent misrepresentation claim began to run upon the spring 2009 meeting with Badger representative Moreland. The City did not file suit until April 2018. Thus, the City's negligent misrepresentation claim is untimely and barred by Ohio Rev. Code. § 2305.09.

B.   **Fraudulent Concealment Doctrine**

Despite the four-year statute of limitations, the City alleges that the fraudulent concealment doctrine extends the statute of limitations and entitles the City to maintain and prosecute its negligent misrepresentation claim against Badger. (Opp'n at 738.) Ohio law recognizes the fraudulent concealment doctrine to toll the statute of limitation "where there is some conduct of the adverse party, such as a misrepresentation, which excludes suspicion and prevents injury." *Bryant v. Doe*, 552 N.E.2d 671, 675 (Ohio App. Ct. 1988).

"The Federal Rules of Civil Procedure, which control pleading in diversity cases, require that the acts constituting fraudulent concealment of a claim be pled in the complaint." *Evans v. Pearson Enters., Inc.*, 434 F.3d 839, 851 (6th Cir. 2006) (internal citations omitted) (citing Fed. R. Civ. P. 9(b)). To plead successfully a fraudulent concealment claim in the complaint, plaintiff must show: "(1) wrongful concealment of their actions by the defendant[]; (2) failure of the plaintiff to discover the operative facts that are the basis of [its] cause of action within the

7

limitations period; and (3) plaintiff's due diligence until discovery of the facts." *Id.* (quoting *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975)).

1. Failure of the City to Discover Operative Facts During Limitation's Period

As an initial matter, there is no dispute that the City did not discover the operative facts that are the basis of this action within the limitations period, so the second prong is met. Thus, the City's reliance on the fraudulent concealment doctrine turns on establishing the two other factors.

2. Badger's Wrongful Concealment of Its Actions

Under Ohio law, the doctrine of fraudulent concealment "tolls the statute of limitations only as to parties that committed or participated in the concealment[.]" *Mattlin Holdings, LLC v. First City Bank*, 937 N.E.2d 1087, 1091 (Ohio Ct. App. 2010) (citing *Metz v. Unizan Bank*, 416 F. Supp. 2d 568, 579 (N.D. Ohio), *amended and superseded on other grounds by* No. 5:05 CV 1510, 2006 WL 8427066 (N.D. Ohio Feb. 28, 2006)). "[T]he [p]laintiff must affirmatively plead facts supporting a claim for fraudulent concealment against each specific [d]efendant who allegedly participated in the concealment in order to state a claim against that [d]efendant which would survive an otherwise expired statute of limitations." *Id.* (internal quotation marks omitted) (quoting *Metz*, 416 F. Supp. 2d at 579).

Nowhere in the City's complaint, or its opposition brief, does the City set forth facts suggesting any wrongful concealment by Badger. In its complaint, the City repeatedly faults Johnson Controls for wrongfully concealing the Savings Reports, which prevented the City from realizing the savings shortfall. (Compl. ¶¶ 8, 66, 71, 78, 84–85, 112.) The City never suggests or alleges that Badger concealed the Savings Reports, contributed to the concealment of the Savings

8

Reports, or concealed any other information that prevented the City from discovering the savings shortfalls.

Absent any allegations in the City's complaint of fraudulent concealment by Badger, the fraudulent concealment doctrine is inapplicable to toll the statute of limitations on the City's negligent misrepresentation claim against Badger. Therefore, the City's negligent misrepresentation claim against Badger is barred by the applicable four-year statute of limitations, and the City's negligent misrepresentation claim against Badger must be dismissed.

## IV. CONCLUSION

For the reasons set forth herein, Badger's motion to dismiss is GRANTED as it pertains to the City's claim of negligent misrepresentation against Badger. This case will proceed with (1) the City's claims of breach of contract and fraudulent inducement against Johnson Controls, (2) Johnson Control's counterclaim against the City, (3) Johnson Control's third-party complaint against Aclara, and (4) Johnson Control's crossclaim against Badger.

**IT IS SO ORDERED**.

Dated: March 11, 2019

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**